***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Garner.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was employed by the defendant on October 9, 2002 as a project manager/supervisor, earning $303.96 per hour, which yielded a compensation rate of $536.00 per week. On October 9, 2002, plaintiff sustained an admittedly compensable closed head injury which resulted in a parietal/temporal/occipital skull fracture of the right frontal lobe with a 3-4 centimeter contusion and a large parietal hemorrhage for which he underwent emergency surgery under the care of Dr. Wesley Fowler.
2. As a result of such injury and the resulting emergency surgery, plaintiff was hospitalized at Memorial Mission Hospital from October 9, 2002, until October 16, 2002, at which time his care was transferred to Dr. Edguardo Diez, the director of the brain injury program at Thoms Rehabilitation Hospital. Upon his discharge from Memorial Mission Hospital, plaintiff was evaluated by the staff at Thoms Rehabilitation Hospital and it was determined that he required 24 hour supervision due to his significant cognitive deficits, speech and language deficits and his inability to provide for his own care or perform activities of daily living.
3. Thereafter plaintiff's wife, Kathy Barnwell, a licensed social worker in North Carolina employed by Henderson County Department of Social Services, who earned $16.70 per hour, took a leave of absence from her job in order to provide 24 hour care for her husband. Such care included providing transporting for his outpatient treatment at Thoms Rehabilitation and the attendance of such appointments due to Mr. Barnwell's inability to communicate or understand directions and recommendations. Ms. Barnwell also assisted him with basic activities of daily living, including bathing, grooming, and insuring proper meals and nutrition. Furthermore, Ms. Barnwell also monitored and administered Mr. Barnwell's medication due to his cognitive deficits and memory problems, monitored his daily activities to insure his safety, and assisted with his cognitive and speech therapy at home based on the recommendations of the staff at Thoms Rehabilitation hospital.
4. Upon additional evaluation, in October 2002, the staff at Thoms Rehabilitation Hospital recommend to Dr. Fowler"at this time there are significant safety issues andconcerns requiring 24 hour supervision".
5. Mr. Barnwell was referred by Dr. Fowler to Dr. Mark Hill for a neuropsychological evaluation. Said evaluation was preformed on November 21, 2002, and measured how well Mr. Barnwell actually performed on particular tasks and how well his brain was functioning. Based on this evaluation, Mr. Barnwell was noted to have both receptive and expressive language problems, which Dr. Hill explained meant Mr. Barnwell could not understand the words when he was spoken to and was unable to use the right words to express himself. Based on this evaluation, Dr. Hill stated Mr. Barnwell was unable to live independently and that there were significant questions regarding his safety. Accordingly, Dr. Hill reported that Mr. Barnwell required 24-hour supervision.
6. Dr. Hill continued to see Mr. Barnwell and on December 3, 2002, again recommended Mr. Barnwell have continued 24 hour supervision until at least after the holidays. During his deposition on March 6, 2003, Dr. Hill again stated that Mr. Barnwell continues to require 24 hour supervision for his own safety. Additionally, Dr. Hill noted that over the holidays Mr. Barnwell had accidently started a fire in the home and became quite upset at his inability to handle the situation. Furthermore Dr. Hill indicated Mr. Barnwell was unable to administer his own medication and required someone who had received sufficient training to assist him with this activity. Dr. Hill also recommended the attendant care provider have some training above high school level in order to insure that they would be able to handle the emotional outbursts of Mr. Barnwell and properly redirect him to avoid safety issues. He further indicated the care giver should have some higher level of training based on Mr. Barnwell's significant brain injury and his significant speech and cognitive impairments.
7. Dr. Edguardo Diez, the director of the brain injury unit at Thoms Rehabilitation Hospital, evaluated Mr. Barnwell on January 20, 2003, at which time he confirmed Mr. Barnwell's significant language dysfunction, memory problems and post-traumatic stress disorder. Based on his evaluation, Dr. Diez declared Mr. Barnwell required 24-hour supervision, 7 days a week. Dr. Diez also indicated the care giver should be able to understand and monitor the patients medications, monitor Mr. Barnwell's activities, understand what he is permitted and not permitted to do based on medical recommendations and respond to emergency situations. Dr. Diez felt that it would be better for Mr. Barnwell to have a care giver with whom he was familiar, including his wife and family members, due to his emotional condition. Dr. Diez further opined that Mr. Barnwell requires 24-hour supervision, 7 days a week.
8. Plaintiff's treating neurosurgeon, Dr. Wesley Fowler, also opined that Mr. Barnwell requires 24-hour supervision, 7 days per week. However, Dr. Fowler deferred to Dr. Diez and Dr. Hill based on their level of training and expertise for a more accurate opinion of the level of care necessary for Mr. Barnwell due to his behavior problems, emotional outbursts and residual complications from the brain injury.
9. Defendants retained the services of Cynthia Cook as their rehabilitation case manager. Based on the 24-hour care recommendations for Mr. Barnwell, the carrier requested that Ms. Cook obtain the compensation rates for care givers. Accordingly, Ms. Cook contacted Kelly Assisted Living, VHP and Advantage Home Care to determine their fee schedules. The corresponding rates for companion/personal care assistants ranged from $13.50 to $16.00 per hour. Rates for certified nursing assistants were approximately $15.50 to $16.50 per hour.
10. Based on her prior experience in coordinating and providing attendant care services, Ms. Cook testified that the prevailing rate for certified nursing assistants in the Asheville area was $9-10.00 per hour, with a $0.35 per hour additional premium for 2nd and 3rd shift hours.
11. In spite of this information, Ms. Cook provided the adjustor with rates of pay for companion/personal care givers based on the inappropriate rates indicated in Form 19s for additional patients with whom she was working. These rates included an hourly rate of $4.88, which obviously violates the federal minimum wage standard. Accordingly, the undersigned finds that such rates are inappropriate and should therefore be disregarded.
12. Based on the averaging of the rates provided by Ms. Cook, the adjustor has undertaken the payment of Ms. Barnwell for 40 hours of attendant care per week at the rate of $7.49 per hour. As discussed above, the $7.49 per hour is based on inappropriate rates and is hereby disregarded.
13. Ms. Barnwell and her sister, Ms. Karen Franklin, a certified nursing assistant, have provided the primary 24 hours per day, 7 days per week care for Mr. Barnwell since his discharge from Thoms Rehabilitation Hospital on October 16, 2002. Ms. Barnwell has paid her sister for all hours for which she has provided care. Accordingly, any payments under this Opinion and Award are due and payable to Ms. Barnwell.
14. Dr. Diez, Dr. Hill, and Ms. Cook all agreed that the care provided by Ms. Barnwell and her sister have been reasonable, appropriate and have greatly assisted in the recovery of Mr. Barnwell.
15. Drs. Hill, Diez and Fowler unanimously agreed that Mr. Barnwell required attendant care 24 hours per day, 7 days per week. In spite of their voluntary payment of 8 hours per day, 5 days per week, defendants failed to offer any competent evidence to support their denial of payment for the 24 hours per day, 7 days per week attendant care, and their denial of these benefits has been based on stubborn unfounded litigiousness and is found to be unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury arising out of and in the course of his employment and as a direct result of the work assigned on October 9, 2002. As the direct and natural result of, and causally related to his injury, plaintiff sustained a severe closed head injury. N.C. Gen. Stat. § 97-2(6).
2. On March 4, 2000, plaintiff's average weekly wage was $303.96 per hour, yielding a compensation rate of $536.00 per week. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff required ongoing attendant care services, 24 hours per day, 7 days per week at the certified nursing assistant level since the date of his discharge on October 16, 2002. Such care has been provided by his wife, a licensed social worker in North Carolina, and his sister-in-law, Karen Franklin, a certified nursing assistant.
4. The prevailing rate for certified nursing care in the Asheville/Buncombe County area is $10.00 per hour with a $0.35 additional premium for all hours after 4 p.m.
5. The care provided by Ms. Barnwell and Ms. Franklin is reasonable and has significantly contributed to the improvement and recovery of the plaintiff in this matter. Accordingly, Ms. Barnwell is entitled to be paid or reimbursed for the 24 hours per day, 7 days per week attendant care services at a rate of $10.00 per hour beginning on October 16, 2002 and continuing until further order of the Commission. N.C. Gen. Stat. §§ 97-25;97-25.1.
6. Defendants have unreasonably denied payment for attendant care services for 24 hours per day, 7 days per week and appealed to the Full Commission for denial of 24-hour attendant care for the plaintiff. In discretion of the Full Commission, counsel of the plaintiff is entitled to have defendants' pay an attorney's fee in the amount of $5,000.00 per N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay plaintiff ongoing temporary total disability benefits in the amount of $536.00 per week until further order of the Commission.
2. Defendants shall provide attendant care services 24 hours per day, 7 days per week at a CNA level of care, beginning October 16, 2002, until further order of the Commission.
3. Defendants shall pay plaintiff's wife, Kathy Barnwell, for the attendant care services for which she has provided or paid for, at a rate of $10.00 per hour for 24 hours a day, 7 days a week beginning on October 16, 2002, until further order of the Commission. All such benefits which have accrued as of this date shall be paid to Ms. Barnwell in a lump sum, and shall not be subject to the attorney fee hereinafter awarded.
4. Defendants shall pay to counsel for plaintiff an attorney's fee in the amount of $5,000.00 for defending this matter on appeal to the Full Commission.
5. Defendants shall pay the costs of this action.
This the ___ day of May, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER